24-2999 Western Missouri, Christopher Bonham v. Frank Bisignano Mr. Hall May it please the Court, my name is Alexander Hall. I represent the appellant in this case, Mr. Christopher Bonham. This case is an appeal of a denial of Social Security disability benefits by the Commissioner, and the standard in such cases is whether or not the Commissioner's denial was supported by substantial evidence. In this case, Mr. Bonham's most important condition is the condition related to his cervical spine, in other words, his neck. The imaging of his neck reflects that he suffers from severe neural foraminal stenosis. Now just for reference, the neural foramina are the opening holes in the spinal canal that allow the spinal cord to exit to the remainder of the body in order to communicate and send signals. So in Mr. Bonham's case, those opening holes are severely narrowed. Other imaging reflects spinal cord indentation, edema or swelling of the spinal cord, and this causes significant impairments, not only in Mr. Bonham's neck, but in his ability to use his arms, his shoulders, causing weakness and significant pain. Now there's only one medical opinion within the record that evaluated Mr. Bonham's ability to function on a day-to-day basis. That was within the context of a VA examiner's opinion, and that VA examiner concluded that Mr. Bonham's impairments were so great that he was essentially unable to use his left arm. Now, turning to the ALJ's conclusion in this case, or the Commissioner's conclusion... Now that was not the strongest of medical experts. That's exactly right, Your Honor, and... Physician assistant. It was a physician assistant. In addition to that, that medical... And it was five years old. Yes, that's correct, Your Honor. Right, but even as five years old, we're looking at a claim for benefits between 2012 and 2016, and so it's still outside the period of time in which the fact that's being subject to determination by the ALJ is, right? So it's closer than everybody else who showed up, but it's still not there, and so what the ALJ says that the ALJ did was they went back through the record and they looked at what all of the various visits and what was reported, and what was reported during that period, 2012 to 2016, seems to be somewhat inconsistent with what the physician's assistant says in 2017. And so at that point, there's a credibility determination, and the ALJ makes a decision that he's going to rely on the various status reports, and in those status reports there are kind of repeated comments, like his strength is near normal on one side and normal on the other side, right? Although he's definitely got this back problem, and with the foramen being narrowed, there is certainly pain, but when you look at the pain itself, the evidence of disability is somewhat limited. And so that seems to me like an argument can be advanced if there's substantial evidence in the record to support the ALJ's finding of fact, and the question is why is the ALJ finding of fact wrong? What's in error about it? Yes, Your Honor. To try to get to the heart of that question, the problem in this case is the lack of functional evidence, and when I use that term functional evidence, I'm alluding to this court's long history of case loss beginning in Lauer v. Apfel and Norper v. Saul. Those are not, that's not long history. Sure. That's very short history. Very short, sure. Multiple decades, 25 years or so of history. And in other circuit courts, there's a longer history of finding similar conclusions that there needs to be. We want, what is it, Pulaski. Pulaski is what, 50 years old now, 40? I believe that's, I believe it's the 80s. These are very newcomers in the Pulaski world. This is from my perspective, Your Honor. I apologize. That's totally true. And Norper is quite, it was a split decision on a, quote, mixed record. Yes, Your Honor. It is not categorical. I completely agree. An appellant's position is not trying to hold this court to find some sort of categorical rule in this case. It does not approach the RFC question as countless cases have before during my years on the court. Absolutely. And so the problem, though, and what the series of cases in this court. As opposed to the ALJ whose analysis was routine and thorough. In the more conventional alignment of cases where you do the medical opinion, you do the medical evidence opinion, and you do the opinion analysis. Absolutely. And so what these cases have in common, though, Lauer v. Apfel in 2001, Hensley v. Colvin, which is a case that affirmed but applied the same rationale in this court, which is in 2016. Now, Norper v. Saul in 2020. These cases all apply a fact by fact, case by case determination. There's no categorical rule that in every case there needs to be a medical opinion that totally connects the dots between the RFC and that medical opinion's conclusions. But it does consider there must be functional evidence that supports the RFC. And so the best way to understand functional evidence is to understand what it's not. Things like MRIs of neuroforaminal stenosis don't tell us how many hours a person can use their arms or how many pounds they can lift. So what did the ALJ rely on to get the hypothetical to give to the VE? That's an excellent question. Looking at the ALJ's decision is the best evidence that we have for that. And it appears that the ALJ looked at a combination of diagnostic imaging, MRIs and x-rays, and looked at physical examination findings. As Judge Erickson rightly pointed out, the ALJ pointed to physical examination findings. And testimony and conduct and history. That's exactly right, Your Honor. Looked at everything that one would look at. And when the issue is so dated that it's un- well, Ann looked at the consulting physicians. And I don't think they failed to take a position. I think their position was the ALJ's position. There was not sufficient evidence to discredit or discount the RFC finding. So the obligation of the ALJ is to create an RFC that is supported by substantial evidence. And when there isn't, it's not a matter of discrediting the RFC that the ALJ creates. The question is, did the ALJ support the RFC that she created? The question is, is there substantial evidence in the record that supports that determination? Absolutely. And the evidence in the record is kind of what it is. And it's old and stale, right? And so the ALJ is in a very difficult position at this point. And what the ALJ did here is he looked at the sort of subjective complaints of pain that Mr. Bonham had made. And then the physical findings that were made at the reviews. And then the images. Because that's really all the ALJ had to look at, right? Absolutely. The thing is, and the reason I pointed to in my earlier question to Judge Kelly, I stated that the ALJ relied exclusively on exam findings and clinical exam findings and diagnostic imaging. It is true we also have Mr. Bonham's own testimony. We have the symptoms. We have the medical examiner's report from the VA. All that evidence, though, counsels in the other direction, counsels in favor of him being disabled. When the ALJ summarized Mr. Bonham's own testimony. But you don't win on a vacant blank record. That's exactly. That's true. You've got the burden of proof. It is the claimant's burden of proof. And your medical evidence couldn't be weaker. Your Honor, I respectfully disagree that the medical evidence is weak. I know you do, but I've had maybe hundreds of these cases, and this is very weak. There is evidence of severe neural pyramidal narrowing. So we have the strong objective basis for the conclusion in this case of finding a result of disability. The one medical opinion that we do have suggests he can't use his left arm. And, you know, I won't continue to summarize the record here. But the problem is twofold. Number one, we have strong objective medical evidence reflecting Mr. Bonham's limitations. But on the other hand, we don't have evidence, functional evidence, as is always required, pursuant to all the cases, including Hensley v. Colbin and the cases that have affirmed in the past. We don't have functional evidence regarding the individual's ability to function on a day-to-day basis that supports the conclusion that despite all these problems he can. We have his functional ability at those treatment sessions between 2012 and 2016. So. That's evidence. I would distinguish functional evidence, the ability to do something over an extended period of time, such as a medical opinion or something similar, from a clinical examination finding documenting within the context of a clinical visit four out of five strength or three out of five strength. So must I have any further questions? Well, you distinguish that. I don't know. I don't think that's valid. The ALJ has a duty to eventually find the residual functional capacity. But who has the burden of producing the evidence in the first instance? There are two burdens that are co-equally born in a Social Security case. The commissioner, or excuse me, the claimant has the obligation and the burden to produce the evidence. But at the same time, because it's a non-adversarial process, the ALJ has the obligation to develop the record when there isn't sufficient evidence within the record to render a conclusion. Are there any questions, Your Honors? Okay. I would respectfully request that this Court remand. Thank you. Mr. Rooney. Good morning, and may it please the Court, Edmund Rooney for the Commissioner of Social Security. This case involves the question of whether or not substantial evidence supports the ALJ's decision finding Mr. Bonham not disabled for the relevant period from 2012 to 2016, and whether or not the ALJ complied with regulations and agency policy in doing so. The ALJ did support her decision with substantial evidence as she reasonably evaluated the large record and found unpersuasive and extreme medical opinion, but nonetheless accommodated Mr. Bonham's impairments in finding he had an RFC for a reduced range of light work. You know, the interesting thing about that to me is that she had all the kind of clinical evidence that we've talked about. There was no functional capacity analysis that had been performed by anyone up to during the relevant timeframe. And I think that it's certainly arguable on the finding of light work, the range that, you know, the weight of 20 pounds, occasionally 10 pounds, frequently standing up to six hours. That you can support from basically the clinical findings, and you can support that she's able, or that Mr. Bonham's able to do those things. But it's that six hours piece that I'm having a hard time figuring out where the evidence in the record that would sustain that. Without that, you don't have a finding that he's actually able to do the light capacity work, right? I mean, because what you know is his gait's been usually normal. His range of motion's pretty good. He's got some impairment, sometimes quite substantial impairment on the one side and the other side not much at all, right? And his complaints of pain, undoubtedly what he's got is a painful condition. You look at the films, they show that. But he's claiming he's been on bed rest the whole time, and that doesn't seem quite consistent with what the clinical findings are. And so I get where you can weigh all that all out, but it's that piece where you say, okay, you can do this six hours a day, day after day, month after month, year after year. That's where I'm starting to say, like, where's the substantial evidence in the record that would support that kind of functional capacity being retained? In this case, the substantial evidence is the ALJ's detailed consideration of the record, which, as we've discussed, it's mixed in this case. The district court recognized this ALJ had a difficult task, given the time that had passed between the date last insured and the time that Mr. Bonham filed for disability, but nonetheless reasonably evaluated the record. And the ALJ also, as has been discussed, is charged under the regulations while adjudicating the disability claim. If she gets to the point where she has to determine an RFC, she has to do that, regardless of what evidence is in the record. When does it begin to turn into the ALJ making their own inferences based on the record, and actually relying on information in the record? Because I think Judge Erickson's point is well taken in terms of, to me, it sort of highlights the problem here of when you can sort of rely on some of the things that perhaps are functional, in the medical records, but then when are you making, as the ALJ, inferences that you're not properly to make? And it seems to me there might be some of that here. It's a tough record. It's old. It's a difficult task. I get it. But I think we still have to look to see whether it's based in anything but those inferences. The ALJs are permitted to make inferences on the records before them, because they are responsible for determining the RFC. And if there's no, in this case, there's no creditable medical opinion, they're left with the task of evaluating the record as it is. But the ALJ here did have the opportunity to get an expert to look at these records, conduct any kind of examination necessary, right? Some kind of functioning expert? Yes. The ALJ has the discretion to request additional examinations at the hearing stage. She did not do that in this case. She had them from the consultant. Yes. So there was existing... So we looked at the same record and said we can't make a contrary... There's no basis to do anything other than what the ALJ has done. Why isn't that substantial support for the ALJ's approach? I think it certainly contributes to the substantial evidence in this case, the fact that medical experts reviewed the record. She can look at those reports and say anything I do more than what I've already done, or as I've been done per the regulations, is duplicative and likely futile. Yes. I would agree. And it was discussed at the oral argument before the district court. The ALJ had the state agency consultant's findings that there was insufficient evidence to determine an RFC. And at the point of this case, any additional opinions would likely be of limited probative value because the ALJ has no evidence. Because of how long ago the relevant period was. My recollection was that essentially what you had is the state evaluator said that the record was inadequate. And the others said that there's nothing I can add. Well, there was something that was then added by the ALJ. The ALJ found that there was a residual functional capacity for light work. And the question is, is there substantial evidence in the record to support that when the two other experts said, we can't do it. We're too far away. Now we know that the ALJ's got a legal duty to do it. That's the real problem is that they have to make a finding. And she made a finding, right? And it's a hard, hard question, factually. The legal piece is nice and fairly neat. It's like, find the functional capacity and is there evidence in the record to support it. And there's big chunks of it that there is evidence. And the question is, do we require more to be substantial evidence in the record? No. The Supreme Court has laid it out very clearly that the substantial evidence standard is not high. And again, to echo the district court, this was a difficult task for the ALJ. But on the record before her, she found Mr. Bonham had a relatively restrictive RFC. But that did not amount to disability for the relevant period. In making her decision, the ALJ found Mr. Bonham had a restrictive RFC for reduced range of work. And specifically regarding his neck and arm impairments, included limitations for frequent handling, fingering, and feeling, and occasional overhead reaching. There is no requirement that the ALJ support an RFC finding with a medical opinion. This court has recognized that in its case law. For example, Schmidt and Hensley, which are cited in our brief. And as we've discussed, the record was adequately developed. The ALJ was not required to add additional opinion evidence. Was there any dispute below about what some of the terminology meant regarding his strength and his ability to think? His range of motion, was that clear on what some of those notations meant in the records? I believe so, yes. The findings that he had full range of motion in his extremities at different points in the record. And not full range in others. And I guess when it wasn't the full range, did we understand sort of the full extent of that limitation? Was there someone who could explain that in the record? Not specifically to my knowledge, but the ALJ was acting under the regulations to determine an RFC. And she found a restrictive RFC. And in the decision, acknowledged the mixed nature of the record. And there was VE support for that, right? Yes, the vocational expert testified at the hearing that given this restrictive RFC, Mr. Bonham was able to, there were jobs in the economy. Isn't that typical to take a range of motion exam or clinical opinion that isn't stated in activity terms? That's the job of a VE to translate that into 2010 and various other limitations. Yes. So, I see I'm out of time. If there are no further questions, the commissioner rest on his brief. Thank you. I think we know the issues. It's a case that truly illustrates the difficulties that the social security disability cases present for ALJs and district judges and court of appeals judges and counsel. So, thank you for the helpful argument. We'll take it under advisement.